UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JULIUS ROBERT NORTON,

                          Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                       14-CV-646S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

          1.      Plaintiff Julius Robert Norton challenges an Administrative Law Judge's

("ALJ") decision dated February 7, 2013, wherein the ALJ determined that Plaintiff was

disabled under sections 216(i) and 223(d) of the Social Security Act (the "Act") during

the closed period of September 16, 2007, through December 22, 2008, after which

Plaintiff's disability ended due to medical improvement.  Plaintiff now contends that this

determination is not based upon substantial evidence, and remand is warranted.

          2.      Plaintiff filed an application for disability insurance benefits under Title II of

the Act on May 18, 2011, alleging a disability beginning on September 16, 2007.  The

claim was initially denied on September 6, 2011.  Plaintiff thereafter requested a hearing

before an ALJ and, on December 13, 2012, Plaintiff appeared and testified in Buffalo,

NY.  The ALJ considered the case *de novo* and subsequently issued a partially

favorable decision on February 7, 2013, finding that Plaintiff was disabled within the

meaning of the Social Security Act between September 16, 2007, and December 22,

2008.[1]  The ALJ further determined that Plaintiff was not entitled to benefits after the

---

[1] Neither party challenges the ALJ's finding, using the five-step sequential evaluation as defined
under the Act (see 20 C.F.R. § § 404.1520, 416.920), that Plaintiff was disabled for the closed period of

closed period because, as of December 23, 2008, Plaintiff's condition had improved such that he was no longer disabled within the meaning of the Act.   Plaintiff filed an administrative appeal and the Appeals Council denied Plaintiff's request for review on June 13, 2014, rendering the ALJ's determination the Commissioner's final decision. Plaintiff filed the instant action on August 8, 2014.

3.      Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 10, 16).  Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted).   Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's

---

September 16, 2007, through December 22, 2008.  After carefully examining the administrative record, including the objective medical evidence and medical opinions rendered therefrom, this Court finds that substantial evidence supports this portion of the ALJ's decision.

conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

5.      To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      An individual's continued entitlement to disability benefits under the Social Security Act is conditioned on periodic review.  42 U.S.C. § 423(f).  The Commissioner may terminate disbursement of benefits upon finding that the impairment is no longer disabling.  Id.  The Commissioner has established an eight-step evaluation process to determine whether an individual continues to be disabled, as defined under the Social Security Act.  See 20 C.F.R. § 404.1594(f).

7.      This eight-step process is detailed below:

First, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1).  If so, the Commissioner will find that the disability ended.  Id.  If not, the Commissioner's review proceeds.

Second, the Commissioner determines whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1.  20 C.F.R. § 404.1594(f)(2).  If so, the claimant's disability is said to continue.  Id.  If not, the Commissioner's review proceeds.

Third, the Commissioner determines whether there has been medical improvement.[2]  20 C.F.R. § 404.1594(f)(3).  If there is no decrease in medical severity, there is no medical improvement.  Upon finding medical improvement, measured by a decrease in medical severity, the Commissioner's review continues.

Fourth, the Commissioner determines whether the medical improvement found in step three is related to the claimant's ability to do work in accordance with 20 C.F.R. §§ 404.1594(b)(1)-(4).  Medical improvement is related to the ability to work if it results in an increase in the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1594(b)(3).  If medical improvement is unrelated to the claimant's ability to work, the Commissioner proceeds to step five.  Id.  If the medical improvement is related to the claimant's ability to work the Commissioner proceeds to step six.  Id.

Fifth, the Commissioner considers whether the exceptions to medical improvement listed in 20 C.F.R. §§ 404.1594(d) and (e) apply to the claimant's medical improvement.  20 C.F.R. § 404.1594(f)(5).  If none apply, the claimant's disability continues.  Id.

---

[2] Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled."  20 C.F.R. § 404.1594(b)(1).

Sixth, if medical improvement is related to the claimant's ability to do work or one of the aforementioned exceptions applies, the Commissioner will determine whether the claimant's impairments are severe.[3]  20 C.F.R. § 404.1594(f)(6).  When the evidence shows that all current impairments do not significantly limit the claimant's physical or mental abilities to perform basic work activities, the impairments are not severe and the claimant will no longer be considered disabled.  Id.

Seventh, if the claimant's impairments are severe, the Commissioner will assess the claimant's residual functional capacity ("RFC") based upon all current impairments and determine whether claimant is able to perform past work.    20 C.F.R. § 404.1594(f)(7).  If capable of doing past work, the claimant is no longer disabled.  Id.

Finally, if the claimant can no longer perform past work, the Commissioner must determine whether the claimant is capable of other work given his RFC assessment and his age, education, and previous work experience.  20 C.F.R. § 404.1594(f)(8).  If the claimant is capable, his disability will have ended.  Id.  If the claimant is incapable, his disability is found to continue.  Id.

8.    Review of the claimant's disability may cease and benefits continued at any point if the Commissioner finds sufficient evidence that the claimant remains unable to engage in substantial gainful activity.  20 C.F.R. § 404.1594(f).  "The Commissioner retains the 'burden of showing that a claimant has the ability to engage in substantial gainful activity' in disability termination proceedings."  Wilson v. Astrue, No. 09-CV-732S, 2010 WL 2854447, at *3 (W.D.N.Y. July 19, 2010) (quoting Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994)).

---

[3] An impairment or combination of impairments is severe if it "significantly limit[s] your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521.

9.      In this case, the ALJ made the following findings with regard to the eight-step process set forth above.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 16, 2007, the date of his disability onset.  (R. 15).[4]

At step two, the ALJ determined that, as of December 23, 2008, Plaintiff did not have an impairment that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 20).

At step three, the ALJ determined that Plaintiff experienced medical improvement as of December 23, 2008.  Id.  The ALJ cited Plaintiff's visit to Dr. Leonard Kaplan on that date, and Dr. Kaplan's assessment that Plaintiff "has a temporary partial disability to a moderate degree" and could "return to work with restrictions."  Id.

At step four, the ALJ concluded that Plaintiff's medical improvement was related to his ability to work because it increased his RFC.  (R. 21).  Specifically, the ALJ noted that Plaintiff's RFC for basic work activities increased as of December 23, 2008.  Id. The ALJ then proceeded to step six because Plaintiff's medical improvement was related to his ability to work.

At step six, the ALJ determined that, as of December 23, 2008, Plaintiff continued to have the severe impairment of L4-5 central and bilateral stenosis with disc herniation.  (R. 21).

At step seven, the ALJ concluded that, as of December 23, 2008, Plaintiff had the RFC to perform the full range of light work as defined by 20 C.F.R. Part 404,

---

[4] Citations to the underlying administrative record are designated as "R."

Subpart P, Appendix 1, but lacked the RFC to perform his past relevant work as a nurse aide.[5]  (R. 21-22).

At step eight, the ALJ found that despite his back impairment, Plaintiff was able to perform a significant number of jobs in the national economy as of December 23, 2008.  (R. 23).  Accordingly, the ALJ determined that Medical-Vocational Rule 202.12 directed a finding of "not disabled" and concluded that Plaintiff's disability ended December 23, 2008.  Id.

10.    The relevant facts are as follows:  Plaintiff was injured on September 16, 2007, when he "felt something 'pop' in his low back" while lifting an object at work.  (R. 207).  On November 26, 2007, Mr. Norton underwent an MRI of his lumbar spine, which showed moderate right paracentral disc herniation at L4-5, with moderate central and bilateral foraminal stenosis and further encroachment on the right lateral recess.  (R. 184).  On January 3, 2008, Plaintiff had his first visit with Dr. Leonard Kaplan, who opined that Plaintiff had a temporary total disability and prescribed Flexeril and physical therapy.  (R. 216-17).  Plaintiff saw Dr. Kaplan again on May 2, 2008, and June 13, 2008, reporting persistent low back pain with radiation into the lower extremities.  (R. 204; 210).  Following the June 13 visit, Dr. Kaplan reported Plaintiff's disability status as "temporary partial disability to a moderate degree" and that he could "return to work with restrictions."  (R. 204).

During this period, Plaintiff saw a number of doctors besides Dr. Kaplan.  For example, on June 25, 2008, Plaintiff saw Dr. Kaplan's colleague, Dr. Jeffrey North, who placed Plaintiff on a "temporary total" disability status until Plaintiff was better able to

---

[5] The Dictionary of Occupational Titles describes the position of nurse aide (355.674-014) as requiring medium exertion, which exceeds the claimant's RFC.  (R. 22).

control his pain.  (R. 254-55).  Plaintiff also saw Dr. Frank Luzi, an independent medical examiner, who opined in May 2008 that Plaintiff could not lift more than 20 pounds and could not sit, stand, or walk for continuous periods.  (R. 482-84).  The ALJ relied primarily on these opinions, and not on Dr. Kaplan, in determining that Plaintiff was disabled between September 16, 2007, and December 22, 2008.  (R. 17-18).  In the ALJ's assessment of disability for that period, he gave Dr. Kaplan's "opinion little weight based on the record as a whole, which shows that the claimant was more limited in his ability to work than estimated by Dr. Kaplan prior to the date disability ended."  (R. 18).

In October 2008, Plaintiff's condition appeared to improve.  He returned to Dr. Kaplan and stated that he felt no pain and was "100% better."  (R. 253).  Dr. Kaplan opined that Plaintiff could return to work with no restrictions.  (R. 193, 253).  After an unsuccessful attempt to return to work in October, Plaintiff saw Dr. Kaplan for a final visit on December 23, 2008.  (R. 190).  Dr. Kaplan's December 23, 2008 diagnosis of Plaintiff is nearly identical to the May and June 2008 diagnoses, though slightly more severe, indicating a progressive loss of functioning.  (Compare R. 190-91; 204-05; 210-11).  In all three reports, Dr. Kaplan states that Plaintiff did not appear to be in acute distress and that posture and gait were normal.  Id.  However, Plaintiff's range of motion diminished with each visit:  In May 2008, Plaintiff had 50% loss in lumbar flexion, 25% loss in extension, and a 25% loss in bilateral rotation and full side bending.  (R. 210).  In June, Dr. Kaplan reported 50% loss in both lumbar flexion and extension and 25% loss in bilateral rotation and right side bending.  (R. 204).  By December, this loss was even greater:  75% loss in lumbar flexion, 50% loss in extension, and 25% loss of side bending and rotation on both sides.  (R. 190).  The "impressions" reported by Dr. Kaplan

are identical for all three visits, and the disability status reported is nearly identical for June and December: "temporary partial disability to a moderate degree" and that he could "return to work with restrictions."[6]  (R. 190, 204).

Plaintiff testified before the ALJ that he lost his insurance coverage at some point in 2008 or 2009.  (R. 36-37).  The record indicates that Plaintiff did not see another medical professional until March 2011, when he visited his primary care physician, Dr. James Panzarella, reporting high blood pressure.  (R. 349-50).  During the visit, Plaintiff stated that his general health was otherwise good and did not mention any back pain. Id.  On August 8, 2011, Plaintiff saw a consultative examiner, Dr. Samuel Balderman, in connection with this disability claim, who opined that Plaintiff had moderate limitations in "bending and lifting" and "prolonged standing or prolonged sitting" due to lumbar pain, but further noted that Plaintiff "display[ed] some symptom magnification during this exam." (R. 287).   On November 26, 2012, Plaintiff went to the emergency room complaining of acute low back pain, and was directed to take ibuprofen, Robaxin, and Ultram for five days, and to ice his lower back.  (R. 352-60).

11.    Plaintiff advances two challenges to the ALJ's decision.  First, Plaintiff contends that the finding of medical improvement, on December 23, 2008, was not based on substantial evidence or consistent with the regulations.[7]  "Under the medical

---

[6] Dr. Kaplan's June examination notes specify restrictions for returning to work: "no lifting greater than 20 pounds, no repetitive bending, lifting or twisting and no sitting or standing greater than 30 minutes at a time." (R. 204).  The December examination notes do not set out the restrictions, instead they are specified in a separate slip that appears to have been completed by PA Dawn Green on the date of the examination.  (R. 584, see also Government's Mem. at 10).  The December restrictions are the same as those given in June, except that Plaintiff was advised not to lift anything greater than 5 pounds. Id.

[7] Plaintiff and the Commissioner spend significant portions of their respective motion papers arguing as to whether the burden shifts to the Commissioner to demonstrate that medical improvement has taken place in a closed period case such as this.  The Second Circuit has declined to address this issue, see Wheeler v. Heckler, 724 F.2d 262, 263 (2d Cir. 1983), nor is there a need to reach the issue

improvement standard, although a claimant may have been deemed disabled, that claimant may later be found not disabled when 'there is substantial evidence that the impairment has improved to such an extent that [he] is now able to work.'"  King v. Astrue, No. 10-CV-6219, 2012 WL 253411, at *5 (W.D.N.Y. Jan. 26, 2012) (quoting Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).  To determine whether a medical improvement has occurred, the ALJ must compare the "'the current medical severity of th[e] impairment[ ] . . . to the medical severity of that impairment[ ] at th[e] time' of the most recent favorable medical decision."  Veino, 312 F.3d at 586-87 (quoting 20 C.F.R. § 404.1594(b)(7)).  In a closed period case such as this, the "time of the most recent favorable medical decision," alternately known as the "point of comparison," starts at the disability onset date.  Chavis v. Astrue, No. 5:07-CV-0018 LEK VEB, 2010 WL 624039, at *8 (N.D.N.Y. Feb. 18, 2010).

The ALJ relies on two sources of evidence in his determination that Plaintiff's back injury had improved as of December 23, 2008.  The ALJ first cites Dr. Kaplan's opinion from Plaintiff's visit on December 23, 2008.  (R. 20).  As noted above, Dr. Kaplan's December 2008 report on Plaintiff's visit is nearly identical to the May and June 2008 reports, though Plaintiff's range of motion decreased with each visit.[8] (Compare R. 190-91; 204-05; 210-11).  Thus, the December 23, 2008 opinion actually points to a decrease in function over time, rather than improvement.  Moreover, the ALJ states elsewhere in his decision that he gives Dr. Kaplan's "opinion little weight based

---

here.   Under any standard, there is not substantial evidence in the record demonstrating medical improvement as of December 23, 2008.

[8] In May 2008, Plaintiff had 50% loss in lumbar flexion, 25% loss in extension, and a 25% loss in bilateral rotation and full side bending.  (R. 210).  In June, Dr. Kaplan reported 50% loss in both lumbar flexion and extension and 25% loss in bilateral rotation and right side bending.  (R. 204).  By December, this loss was even greater:  75% loss in lumbar flexion, 50% loss in extension, and 25% loss of side bending and rotation on both sides.  (R. 190).

on the record as a whole, which shows that the claimant was *more limited in his ability to work than estimated by Dr. Kaplan* prior to the date disability ended." (R. 18, emphasis added). Having discounted Dr. Kaplan's earlier reports for failing to appreciate the full extent of Plaintiff's disability prior to December 23, 2008, the ALJ fails to explain why Dr. Kaplan's opinion suddenly becomes reliable as a reference for the disability's ending point. Because the report that the ALJ relies on shows a trend of decreased functioning, and because the ALJ fails to provide any explanation as to the disparate weights he appears to give to Dr. Kaplan's various opinions, this Court finds that Dr. Kaplan's examination notes do not provide substantial evidence of medical improvement as of December 23, 2008.

The ALJ's second source of evidence for medical improvement is Plaintiff's failure to seek treatment between December 23, 2008, and March 3, 2011. (R. 20-21). Although it is notable that Plaintiff failed to seek medical treatment during this period, that fact alone does not provide substantial evidence of medical improvement. See Meyers v. Astrue, 681 F. Supp. 2d 388, 404 (W.D.N.Y. 2010) ("The absence of any medical opinion specifically stating that Plaintiff remained disabled [for a specific time] does not bar the reasonable inference that Plaintiff remained disabled during that period . . . ."). This is especially so where, as here, Plaintiff had a credible reason for interrupting treatment. Shaw v. Chater, 221 F.3d 126, 133 (2d Cir. 2000) (disabled claimant cannot be denied benefits for failing to obtain treatment that he cannot afford) (citing Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)). Plaintiff testified that his insurance ended sometime in 2008 or 2009, and that he was no longer able to afford care. (R. 36-37). Plaintiff's condition may have improved sometime between his final

11

visit to Dr. Kaplan on December 23, 2008, and the next time he sought treatment in March 2011, but setting the date of medical improvement to coincide with Plaintiff's final visit to Dr. Kaplan appears to be an arbitrary decision rather than one based on substantial evidence.

In sum, there is no evidence in the record, much less substantial evidence, that Plaintiff's condition improved any time prior to March 2011, at the earliest.  This Court therefore finds that the ALJ's determination of medical improvement was not based on substantial evidence.   Remand is appropriate for further consideration.  See, e.g., Monette v. Astrue, 269 F. App'x 109, 112 (2d Cir. 2008); Veino, 312 F.3d at 588 (remanding in termination of benefits case when there was no adequate basis on which to conclude whether Commissioner's finding was supported by substantial evidence).

12.    Second, Plaintiff contends that the ALJ's assessment of Plaintiff's RFC after December 23, 2008 is not supported by substantial evidence.  As is required under the Act, the ALJ sets out an RFC assessment that "include[s] a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A.); see also Balsamo v. Chater, 142 F.3d 75, 80-81 (2d Cir. 1998).  The ALJ notes that he did not find Plaintiff's testimony as to significant physical limitations credible due to Plaintiff's failure to seek treatment between December 2008 and March 2011.  (R. 21).  Again, although this provides some evidence of Plaintiff's symptoms (or lack thereof), it is not substantial evidence that Plaintiff had the RFC "to perform the full range of light work" as of December 23, 2008.  Id.   On the contrary, as discussed above, Dr. Kaplan's

examination notes suggest that Plaintiff's condition had worsened slightly as of December 23, 2008 (R. 190-91), and Plaintiff testified that he lost his insurance in 2008 or 2009 and could no longer afford care (R. 36-37).   The remainder of the RFC assessment looks to the period after Plaintiff resumed medical care, between March 2011 and December 2012.   (R. 21-22).   The ALJ notes that he also did not find Plaintiff's testimony as to his symptoms and daily activities credible in light of Plaintiff's failure to report back pain at the visit with his primary care physician in March 2011.  (R. 21).  Finally, he notes Plaintiff's apparent improvement in the medical source statement given by Dr. Balderman in August 2011.  (R. 22).  Although these reports suggest that Plaintiff's condition may have improved by March 2011, they do not constitute substantial evidence regarding the severity of Plaintiff's impairment on December 23, 2008—more than two years earlier.  Accordingly, this Court concludes that remand is appropriate.

13.    After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision.   Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.


IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED;

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:  February  29, 2016
       Buffalo, New York

<u>/s/William M. Skretny</u><br>
WILLIAM M. SKRETNY<br>
United States District Judge